# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 8598 |
| | ) | |
| v. | ) | Judge George M. Marovich |
| | ) | |
| WEXFORD HEALTH SERVICES, INC., | ) | |
| MARCUS HARDY, TARRY WILLIAMS, | ) | |
| and JASON DUNN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie Hampton ("Hampton"), with the help of his appointed counsel, filed an amended complaint against defendants Wexford Health Services, Inc. ("Wexford"), Marcus Hardy ("Hardy"), Tarry Williams ("Williams") and Jason Dunn ("Dr. Dunn"). Wexford filed an answer. Defendants Hardy and Williams filed a joint motion to dismiss. Defendant Dr. Dunn also filed a motion to dismiss. For the reasons set forth below, the Court grants the motions to dismiss and grants plaintiff leave to amend.

## I. Background

The Court takes as true the allegations in plaintiff's amended complaint.

Hampton has been incarcerated since 2002. He was originally housed at Menard Correctional Facility ("Menard"), but he now resides at Stateville Correctional Facility ("Stateville"). During the time in which he has been incarcerated, Hampton was had problems with his vision.

Hampton first complained about his vision in April 2004, when he was housed at Menard. At the time, Hampton complained that his vision was blurry and that he suffered headaches while reading. Plaintiff was sent to an eye doctor, who prescribed glasses. Hampton saw an eye doctor again in 2010, and that doctor also prescribed glasses.

In January 2012, Hampton was transferred to Stateville in what was expected to be a temporary transfer. Upon his arrival, Hampton told a nurse that he was suffering headaches and blurred vision. The nurse told Hampton to submit a "sick-call slip," but she also told him it was unlikely he could see an eye doctor given that Stateville did not have one. Over the next few weeks, Hampton complained to several people that he was suffering blurred vision and headaches. He was told that he would have to wait until his return to Menard to see an eye doctor.

By May 11, 2012, Hampton's transfer to Stateville had become permanent. Hampton proceeded to file two grievances about the lack of attention to his vision problems. The grievances were not acted upon. Hampton continued to complain about his vision to prison officials and staff, including nurses, medical technicians, the house call sergeant and a lieutenant.

Finally, in January 2013, Hampton saw defendant Dr. Dunn, a medical doctor. During the exam, Hampton told Dr. Dunn about his headaches, blurred vision and light sensitivity. Dr. Dunn told Hampton that his glasses prescription was incorrect. Dr. Dunn recommended that Hampton be sent to UIC for further evaluation.

Hampton saw an eye doctor at UIC on May 24, 2013. The eye doctor concluded that Hampton had glaucoma and nerve damage to his eyes. The eye doctor told Hampton that if his eye condition had been treated in 2004, it might have been rectified. Finally, the eye doctor

prescribed Brimondine Tetrate Opthalmic solution for Hampton's eyes and scheduled a follow-up examination. Hampton's follow-up examination was in April 2014.

Since the April 2014 visit, Hampton has had no other treatment, though he continues to suffer from blurred vision and headaches.

Hampton filed suit against four defendants, including Dr. Dunn. Defendant Wexford provides health care to prisoners in Illinois. Defendant Hardy is the former warden of Stateville. Defendant Williams is the current warden of Stateville. Hampton alleges that defendants have violated the constitution by being deliberately indifferent to his medical needs.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)

(quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

## III. Discussion

### A. The wardens' motion

Former-warden Hardy and current-warden Williams move to dismiss on the grounds that plaintiff seeks only monetary relief from state officials sued only in their official capacities. Their point is well taken. Plaintiff has named both Hardy and Williams in their official capacities. Furthermore, in his prayer for relief, plaintiff seeks only monetary damages, not prospective relief.

In this suit, plaintiff seeks relief under § 1983, which provides a private right of action for constitutional violations. Section 1983 states, in relevant part, "[e]very *person* who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law." 42 U.S.C. § 1983 (emphasis added). A State, however, is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("a State is not a person within the meaning of § 1983."). Plaintiff, of course, has not named the State of Illinois as a defendant. He has named Hardy (the former warden) and Williams (the current warden) in their official capacities. As the Supreme Court has explained, "a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office," i.e., the State itself. *Will*, 491 U.S. at 71. Thus, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). The Supreme Court went on to explain:

> By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'

*Hafer*, 502 U.S. at 26.

Thus, defendants Hardy and Williams are correct that plaintiff cannot proceed against them in their official capacities, which is the only capacity in which plaintiff has sued them. Defendants' motion to dismiss is granted. This defect, however, is easily curable. Accordingly, the Court grants plaintiff leave to amend.

**B. Dr. Dunn's motion**

Dr. Dunn has also filed a motion to dismiss. Dr. Dunn first argues that plaintiff's claim should be dismissed, because plaintiff has sued him only in his official capacity. The point is well taken. In his official capacity, Dr. Dunn is not a "person" for purposes of § 1983, so the claim as it is presently alleged must be dismissed.

In addition, Dr. Dunn argues that plaintiff has not plausibly alleged that he was deliberately indifferent to Hampton's medical needs. Although the constitution does "not mandate comfortable prisons," it does prohibit cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment['s]" prohibition on cruel and unusual punishments. *Estelle*

*v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). The Supreme Court elaborated on the meaning of deliberate indifference in *Farmer v. Brennan*, where it said:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of cruel and unusual punishment.

*Farmer v. Brennan*, 511 U.S. at 837-38 (internal citations omitted). Thus, neither negligence nor malpractice constitutes a violation of the constitution. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("Evidence that the official acted negligently is insufficient to prove deliberate indifference."); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.").

In this case, Hampton alleges that for many years he complained about his blurred vision and headaches to various people at Menard. When he transferred to Stateville, Hampton had to wait an entire year before he could see Dr. Dunn about his blurred vision and headaches. By that time, Hampton had filed two grievances and had complained about his vision to nurses, medical technicians, the house call sergeant and a lieutenant. Hampton alleges that he finally saw Dr. Dunn in January 2013. During the exam, Hampton told Dr. Dunn about his headaches, blurred vision and light sensitivity. Dr. Dunn told Hampton that his prescription for glasses was

incorrect and recommended that Hampton be sent to UIC for further evaluation. At UIC, the eye doctor concluded that Hampton had glaucoma.

The Court agrees that Hampton has not plausibly alleged that Dr. Dunn was deliberately indifferent to Hampton's serious medical condition. At Hampton's first appointment with Dr. Dunn, Dr. Dunn (a medical doctor, not an eye doctor) concluded that Hampton needed a new prescription for his glasses and referred Hampton to an eye doctor. That treatment does not constitute deliberate indifference. To the extent Hampton's theory is that Dr. Dunn should have diagnosed Hampton with glaucoma, that would constitute, at best, malpractice; it would not constitute deliberate indifference. Hampton's theory, instead, might be that he was forced to wait too long to get an appointment with Dr. Dunn. Hampton has not alleged, however, that it was Dr. Dunn who kept Hampton from getting an appointment with Dr. Dunn sooner. Instead, Hampton seems to be alleging that other people ignored his requests for medical treatment. Hampton has not named those others as defendants, and Dr. Dunn is not responsible for the behavior of others.

In short, Hampton has not plausibly alleged that Dr. Dunn was deliberately indifferent to his medical needs. Accordingly, the Court dismisses plaintiff's claim against Dr. Dunn. Plaintiff is granted leave to amend.

## IV. Conclusion

For all of these reasons, the Court grants defendant Dunn's motion [35] to dismiss. The Court grants defendants' Hardy and Williams's motion [37] to dismiss. Plaintiff is granted 28 days to file a second amended complaint. This case is set for status on May 19, 2015 at 11:00 a.m.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: April 20, 2015