038654/01245/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE HAMPTON, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC. et al. <br><br> Defendants. | Case Number 1:13 cv 08598 <br><br> Judge William T. Hart |

**MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, WEXFORD HEALTH SOURCES, INC.**

NOW COMES the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for its Memorandum of Law in Support of its Fed. R. Civ. P. 56 Motion for Summary Judgment, states as follows:

## I. INTRODUCTION

Plaintiff, WILLIE HAMPTON, an inmate in the Illinois Department of Corrections ("IDOC"), currently serving an eighty-four (84) year term for multiple convictions, has filed a complaint against the IDOC's medical vendor, WEXFORD HEALTH SOURCES, INC. ("Wexford"), claiming violations related to, *inter alia*, failing to properly diagnose and treat his suspected non-tension glaucoma. *See* Defendant, Wexford's, 56.1 Statement of Undisputed Facts ("SOF"), ¶ 2, 4. The Plaintiff's Second Amended Complaint sues Wexford based solely on the actions of its agents or employees in knowing, but, allegedly, failing to properly treat the Plaintiff's suspected glaucoma. (SOF at ¶¶ 2-3). He does not allege that Wexford maintained any unconstitutional policy or widespread practice. (SOF at ¶ 3). In other words, the Plaintiff is

suing Wexford based on a theory of *respondeat superior* liability, a claim unequivocally barred by the controlling case law. Thus, Plaintiff's claim fails at the outset.

However, even if Plaintiff did raise a proper *Monell* liability claim against Wexford, the undisputed medical testimony finds that the Plaintiff has identified no unconstitutional policy, no unconstitutional widespread practice, nor has the Plaintiff shown that he even received inadequate medical treatment from Wexford medical personnel. Rather, the uncontroverted factual record demonstrates that the Plaintiff has received frequent on-site evaluation by independent optometrists, routine off-site consultation with medical specialists at the University of Illinois-Chicago Medical Center ("UIC"), specialized diagnostic testing, multiple types of prescription eye drops, and multiple pairs of eyeglasses. (SOF at ¶¶ 30 -33, 37-38, 40, 42, 43, 45, 46, 48, 49, 50, 53-54, 56, 58, 60). The undisputed factual record could not even support a claim of medical negligence against Wexford, let alone, a claim of constitutional deliberate indifference. In both pleading and in fact, Plaintiff's claims fail. Thus, this Court should grant summary judgment in Wexford's favor and against the Plaintiff, as a matter of law.

## II. MATERIAL FACTS

Wexford incorporates its 56.1 Statement of Undisputed Facts, and accompanying exhibits, filed concurrently with its Motion for Summary Judgment and supporting Memorandum of Law.

## III. ARGUMENT

A. **Venue and Jurisdiction are proper**

This is a claim based on 42 U.S.C. § 1983 and Wexford has consented to this Court's jurisdiction and venue by admission. (SOF at ¶ 1).

**B.     Summary Judgment is proper in this matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.     The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.**

      1.     *The Plaintiff Cannot Sue Wexford Based on Respondeat Superior Liability*

The Plaintiff cannot sue Wexford based on a theory of *respondeat superior* liability. It is "well established that Section 1983 creates a cause of action based on personal liability that is predicated upon fault." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005). The doctrine of *respondeat superior* liability does not apply to actions filed under 42 U.S.C. § 1983. *Pacelli v. Devito*, 972 F.2d 871, 877 (7th Cir. 1992).

In *Iskander v. Forest Park*, the Plaintiff tried to sue a private corporation based on the alleged civil rights violations committed by the private corporation's employee. 690 F.2d 126, 127 (7th Cir. 1982). The Seventh Circuit held that "Section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Id.* at 129. Moreover, the Seventh Circuit held that, "just as a municipal corporation is not vicariously liable upon a theory of *respondeat*

3

*superior* for the constitutional torts of its employees…a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Id.* As the Seventh Circuit recently noted, "*Iskander* is compatible with the holding of every circuit to have addressed the issue." *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014).

Here, the Plaintiff has sued only Wexford, a private corporation. (SOF at ¶ 3). He has not sued any individual medical provider. In fact, Plaintiff's Second Amended Complaint does not even break down his allegations between Wexford and the individual non-medical IDOC Defendants. Instead, he raises the exact same allegations against the two warden defendants as he does against Wexford - a medical company. (Dkt. # 59). Clearly, the Second Amended Complaint seeks to hold Wexford derivatively liable for the alleged actions of its employees rather than alleging any primary liability against Wexford. If there was any question that the Plaintiff is attempting to sue Wexford based on *respondeat superior* liability, he cleared it up at his deposition when he stated, unambiguously, that he was suing Wexford only based on the actions of its employees. (SOF at ¶ 3). This is an allegation of *respondeat superior* liability, which is prohibited in a Section 1983 claim. Thus, Plaintiff's claim fails at the outset.

    2.    <u>*Even if the Plaintiff has Pled a Monell Claim Against Wexford, He Has Not Identified Any Unconstitutional Policy or Practice*</u>

Even if this Court interprets the Plaintiff's Second Amended Complaint as stating an actual *Monell* claim against Wexford, he has not met his burden of proof in suing a corporation under Section 1983. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). As noted, private corporations cannot be sued in Section 1983 litigation for *respondeat superior* liability based on the actions of its employees. *Iskander,* 690

4

F.2d 126 at 129. In order to recover against a corporate defendant under §1983, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). There are two components to this inquiry, first the Plaintiff must show that an unconstitutional policy or practice exists, and then, second, the Plaintiff must show that deliberate indifference occurred as a result of this unconstitutional policy or practice. The Plaintiff fails on both showings.

<u>First, the Plaintiff has not produced a single Wexford policy</u>. Fact discovery has closed and the Plaintiff cannot point to a single Wexford policy because he never pled that Wexford had an unconstitutional policy, never asked for a single policy in discovery, and never requested a deposition of a Wexford Defendant in order to even discuss Wexford policies. Absent clear evidence of an unconstitutional policy, this Court should not assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford had an unconstitutional policy or practice, but could produce no evidence of any such policy or practice. 615 Fed. App'x. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that the prisoner's self-serving idea of a policy or practice that promoted delaying medical treatment was senseless because a policy to provide inadequate medical care would actually end up costing Wexford more money in the long-term. *Id.*

*Montague* is instructive in the instant litigation. Plaintiff has produced no evidence of an unconstitutional policy. Nor does it make sense that Wexford would have an "off the books" policy to provide inadequate medical treatment because such a policy would end up costing Wexford more money in the long-term, either through increased medical costs, such as emergency medical treatment, or increased litigation costs.

Second, Plaintiff has produced no evidence that Wexford maintains a widespread unconstitutional practice. Initially, such language is wholly absent from Plaintiff's Second Amended Complaint and the Complaint does not even make reference to the medical care of any other prisoner besides the Plaintiff. (Dkt. # 59). Thus, Plaintiff has not alleged a widespread practice. Even if he had made such an allegation, he has no evidence to offer in support of that allegation because his discovery was limited only to the Plaintiff's medical records. There is simply no evidence of any unconstitutional widespread practice of Wexford because the Record is silent as to the medical treatment of any other prisoner besides this Plaintiff.

Discovery has closed and the Plaintiff cannot meet his first hurdle in proving a *Monell* claim - that an unconstitutional policy or practice exists. Therefore, this Court should grant summary judgment in Wexford's favor.

3. *The Wexford Medical Providers Did Not Exhibit Deliberate Indifference*

Similarly, the Plaintiff cannot meet his burden of proof on the second element of a *Monell* claim - that deliberate indifference occurred because of an unconstitutional policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. As noted, in order to prove a *Monell* violation, the Plaintiff must first show that an unconstitutional policy or practice existed and then, second, must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010).

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need

6

or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that the medical providers actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless purposely and deliberately withheld such treatment. *See Sellers*, 41 F.3d at 1102 (emphasis added). While the Plaintiff has not sued any individual Wexford medical provider, the comprehensive record of medical treatment provided by Wexford medical providers to this Plaintiff defeats his claim *See Stallings v. Hardy*, 11 c 8107, 2013 U.S. Dist. LEXIS 153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013) (Because the individual Wexford doctors did not commit deliberate indifference, "Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners").

   a. *The Plaintiff cannot prove that Wexford had the requisite personal knowledge*

The Plaintiff cannot satisfy his burden of proving that Wexford knew about his alleged, defective medical care of his suspected glaucoma. In order to establish subjective knowledge, the Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993, citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Here, the Plaintiff admitted that he never wrote any letters to Wexford regarding his medical concerns and that he only wrote letters to IDOC employees Warden Hardy and Warden Williams. (SOF at ¶ 64). Second, the Plaintiff testified that he would only tell eye doctors, about his eye-related complaints. (SOF at ¶ 13). However, Wexford does not employ the onsite optometrist and, certainly, does not employ the medical doctors at UIC who examined the Plaintiff. (SOF at ¶ 13).

7

Third, the Plaintiff, confusingly, also testified that he would always make a medical provider aware of any symptoms that he was currently experiencing during an examination and could not think of a situation where he would not tell a doctor what was wrong. (SOF at ¶ 13). The record demonstrates that during multiple medical appointments with Wexford medical providers, the Plaintiff made no eye-related complaints of any kind. Specifically, the Plaintiff made no eye-related complaints during examinations with Wexford medical providers on: May 19, 2009; July 19, 2009; March 23, 2011; March 28, 2011; May 3, 2011; May 17, 2011; August 3, 2011; September 6, 2011; September 12, 2011; September 28, 2011; October 24, 2011; October 25, 2011; October 28, 2011; December 13, 2011; December 15, 2011; January 21, 2012; June 1, 2012; July 5, 2012; July 19, 2012; August 11, 2012; November 5, 2012; November 8, 2012; November 14, 2012; December 14, 2012; January 18, 2013; July 15, 2013; July 17, 2013; August 10, 2013; August 27, 2013; September 11, 2013; May 13, 2015; September 16, 2015; January 30, 2016; April 4, 2016; June 8, 2016; June 20, 2016; June 22, 2016; June 24, 2016; June 26, 2016; July 19, 2016; August 22, 2016; September 20, 2016; October 19, 2016; October 21, 2016. (SOF at ¶ 34, 36, 39, 51-52, 55, 57, 59, 61, 63).

In fact, on September 26, 2016, when the Plaintiff was transferred from Stateville to Menard Correctional Center, Wexford medical personnel performed an intake screening where the inmate was asked to give a subjective report of all of his medical problems. (SOF at ¶ 62). The Plaintiff told the Wexford intake screeners about his history of hypertension and mental health concerns but made no mention, at all, of any glaucoma concerns or vision problems. (SOF at ¶ 62).

Fourth, the medical records do not demonstrate any clear problems with Plaintiff's medical treatment. When UIC ran tests of the Plaintiff's visual acuity they found, on multiple occasions, that he had 20/25 vision in the right eye and 20/20 vision in the left eye. (SOF at ¶ 43, 45). When

8

specialized Visual Field Tests ("VFT") were run on the Plaintiff, he, routinely, returned high false-negative scores. (SOF at ¶ 48 - 20% false negative score); (SOF at ¶ 54 - 41% false negative score). These are exceptionally high false-negative scores and indicate that a patient is not responding accurately, or truthfully, to the test. (SOF at ¶ 54). On at least one occasion, the Plaintiff was scheduled for an on-site eye examination by the ophthalmologist but failed to show up for his appointment. (SOF at ¶ 71).

While the Plaintiff alleges that Wexford delayed treatment, in many instances, the "delays" between appointments occurred because his non-Wexford, independent, eye-doctors did not schedule him for follow-up appointments for several months. *See e.g.,* (SOF at ¶ 49). Also, objective medical testing found only a diagnosis of questionable or suspected non-tension glaucoma. *See e.g.,* (SOF at ¶43) (noting that UIC found only "questionable NTG"). The Plaintiff's medical records do not provide clear, unmistakable evidence of inadequate medical treatment.

Thus, by the Plaintiff's own admission, he did not write to Wexford complaining of a problem, and he did not tell any of its employees about a problem. (SOF at ¶ 64, 13). Moreover, the Plaintiff's medical chart is replete with instances where the Plaintiff sought treatment but made no eye-related complaints, and objective testing found excellent eyesight while subjective visual field tests found suspect responses from the Plaintiff. *Compare* (SOF at ¶ 43, 45) *with* (SOF at ¶ 48, 54). Fact discovery has closed and the Plaintiff has no support showing that Wexford was subjectively aware that he was receiving inadequate medical treatment.

    b. *Nor can the Plaintiff show that the medical providers displayed the required culpability*

The Plaintiff cannot meet his burden of showing that the medical providers acted with the required culpability in treating his complaints. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the

9

plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for a claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is not entitled to demand specific care, nor the best care possible, but rather, he is entitled to reasonable measures to meet a substantial risk of serious harm to him. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

Courts have painstakingly articulated what deliberate indifference *is not*. "[D]eliberate indifference is not medical malpractice" and "mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008); *Estate of Cole* 94 F. 3d at 261. The Eighth Amendment does not entitle an inmate to demand specific care or the best care possible. *Forbes*, 112 F. 3d at 267. A prison official is "free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With respect to the culpable state of mind requirement, gross negligence is not enough; the conduct must be reckless in the criminal sense. *Lee. v. Young*, 533 F.3d 505, 509 (7th Cir.

2009). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016).

Here, fact discovery has closed, and the only Doctor who reviewed the Plaintiff's medical records and provided testimony was Stateville's Medical Director, Dr. Obaisi. He testified that all Wexford medical providers complied with the applicable community standard of care in treating the Plaintiff's NTG. (SOF at ¶ 75). In support of Plaintiff's claims of inadequate and delayed medical treatment, he relies only on his own, self-serving, lay opinions, rather than any testimony from a doctor or, otherwise, qualified medical professional.

Without verifying medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 1999); see also *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately).

Nor has the Plaintiff met his burden of providing verifying medical evidence supporting his allegation that delayed medical treatment caused him harm. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"). In fact, despite alleging in his Second Amended Complaint that Wexford caused "irreversible damage" to his eyes, the Plaintiff admitted, under oath, that no doctor ever actually made that statement. (SOF at ¶ 74).

11

As to the Plaintiff's allegation that a concern about losing his eyesight caused him to develop hypertension, the Plaintiff, once again, admitted, under oath, that no medical professional has ever told him that his glaucoma is somehow related to or caused his hypertension. (SOF at ¶ 73). Dr. Obaisi, a physician with almost forty (40) years of experience, explained that there is no evidence, whatsoever, supporting this accusation. (SOF at ¶ 7, 73).

A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain*, 512 F.3d at 894-95. Plaintiff had years to conduct discovery in this case and yet he cannot point to a single piece of evidence suggesting that another doctor would have even acted differently than Wexford medical personnel did in treating his suspected NTG. Accordingly, he cannot meet his burden of proving that *no* other doctor would have responded as Wexford medical personnel did in treating his suspected NTG. Accordingly, his claim fails.

    c.  *Nor can the Plaintiff show that the Wexford medical providers acted with neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect. The Seventh Circuit requires that, when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered not just the Plaintiff's selected excerpts. *See Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999). A plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. See *Id.*; see also, e.g., *Guttierez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997) (holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference and a court must examine the entire record, not just isolated events).

Here, the Plaintiff received extensive medical treatment by Wexford physicians for other medical conditions of which he makes no complaints. He has received treatment for athletes foot; getting a Q-tip stuck in his ear; shoulder pain; bicep pain; back pain; muscle pain when he hurt himself lifting weights in the prison yard; routine cardiac and hypertension monitoring; and headaches. (SOF at ¶ 34, 36, 51-53). Moreover, the Plaintiff has received specialized medical diagnostic treatment for these other conditions, as ordered by Wexford medical personnel, including: X-Rays for his multiple complaints of shoulder and back pain; multiple EKGs as part of his routine cardiac and hypertension monitoring; a special medical permit asking the IDOC to cuff the inmate in a less restrictive manner when he complained that standard cuffing caused him pain; and a three day "lay-in" permit when he complained of muscle pain that asked the IDOC to deliver the inmate's meals directly to his cell - like hotel room service. (SOF at ¶ 36; 51, 55, 63). Rather than demonstrating neglect, the Plaintiff's medical chart demonstrates consistent, comprehensive, and compassionate medical care by Wexford personnel.

**D.     The Plaintiff's claim for punitive damages fails**

The Plaintiff seeks punitive damages as a result of Wexford's alleged deliberate indifference; however, he has not proven any set of facts that would allow him to recover punitive damages. Initially, Plaintiff has not sued any individual medical provider but rather only sued Wexford, a corporation, in its official capacity as the IDOC's medical vendor based on the alleged actions of its employees. (Dkt. # 59). Section 1983 punitive damages are predicated on personal liability, not derivative liability, and as such are not available against a municipality or a corporation like Wexford. *See e.g., City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); 42 U.S.C. §1983; *Robinson v. City of Harvey, Ill.* 617 F.3d 915, 916 (7th Cir. 2010).

Even if punitive damages were available against Wexford, Plaintiff has failed to articulate a set of facts justifying the imposition of punitive damages. Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011). A finding of a question of fact as to a claim of deliberate indifference does not necessitate a finding of callous indifference warranting punitive damages. *Id.* at 924; *Alvarez v. Wexford Health Sources, Inc. et al.*, 2016 U.S. Dist. LEXIS 167747, * 21, n.14 (N.D. Ill. Dec. 5, 2016).

Should the Court find that a question of fact exists on the Plaintiff's deliberate indifference claim against Wexford, his actions certainly cannot be said to warrant punitive damages. The undisputed factual record shows that no Wexford medical provider intended to cause harm to the Plaintiff; no Wexford medical provider acted recklessly in treating the Plaintiff; and no Wexford medical provider caused any harm to the Plaintiff. (SOF at ¶ 76). In fact, all Wexford medical providers only desired the best possible medical outcome for this Plaintiff. (SOF at ¶ 76). Accordingly, even if the Court finds that a question of fact exists on the deliberate indifference claim, the Court should still grant summary judgment in Wexford's favor on Plaintiff's punitive damages claim.

## CONCLUSION

The Plaintiff's deliberate indifference claim against Wexford fails. First, the Plaintiff seeks to hold Wexford liable under a theory of *respondeat superior* liability based on the actions of its employees - even though *respondeat superior* liability is not allowed in a Section 1983 claim. Second, Plaintiff did not plead a *Monell* liability claim because his Second Amended Complaint is devoid of any allegations, or even mention of, any allegedly unconstitutional policies or widespread

14

practices by Wexford. Third, even if he did plead a *Monell* claim, the Plaintiff cannot show that Wexford even had notice of problems with his eye care because he admitted that he never wrote Wexford any letters and the medical chart shows inconsistent test results. Fourth, the Plaintiff has offered nothing beyond his own self-serving, lay opinion that the medical care he received was inadequate or delayed. Fifth, the undisputed medical record demonstrates that rather than neglecting the Plaintiff, Wexford provided comprehensive and compassionate care - going so far as to even ask IDOC to deliver the Plaintiff's meals to his cell house when he complained of back pain. Sixth, the Plaintiff has not alleged any set of facts that would entitle him to punitive damages.

There is no set of facts on which the Plaintiff can prevail against Wexford. Accordingly, this Court should grant Wexford's Motion for Summary Judgment and enter judgment in favor of Wexford and against the Plaintiff.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC. prays that this Honorable Court enter an Order granting Summary Judgment in its favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs, and for any other relief deemed just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ James F. Maruna
    One of the Attorneys for Defendant,
    WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 16, 2017 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8453571 JMARUNA;JMARUNA